In re Rosemary BROWN, Debtor.

**FIRST JERSEY NATIONAL BANK**

v.

**Rosemary BROWN, Appellant.**

No. 91–5292.

United States Court of Appeals,
Third Circuit.

Argued Oct. 15, 1991.

Decided Dec. 16, 1991.

Helen D. Chaitman (argued), Timothy S. Flaherty, Ross & Hardies, Somerset, N.J., for appellant Rosemary Brown.

Peter R. Sarasohn (argued), Bernard Schenkler, Bruce Buechler, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for appellee First Jersey Nat. Bank.

Before SLOVITER, Chief Judge, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal we decide that a bankruptcy judge was required to give preclusive effect to a state court summary judgment

on liability in a mortgage foreclosure proceeding. Furthermore, because the amount due is yet to be determined, the bankruptcy judge should permit the state court proceedings to continue. Because it appears that the bankruptcy judge's denial of the mortgagee's motion to dismiss the Chapter 11 petition here was influenced by a misunderstanding of issue preclusion, we believe that the case should be remanded for further consideration. Accordingly, we will reverse the district court order dismissing the petition.

This opinion discusses two interrelated bankruptcy cases, the first by a corporation, the second by an individual who had owned an interest in that company. The debtor here, Rosemary Brown, filed a petition for reorganization under Chapter 11 as the result of earlier financial difficulties, and subsequent bankruptcy proceedings, encountered by Repro Supply Corporation. Rosemary Brown and her husband, Gary, each owned fifty percent of the stock of that company.

Although successful for a time, Repro became unable to pay loans it had received from First Jersey National Bank and filed for Chapter 11 protection in 1986. The bankruptcy court entered a cash collateral order in which Gary Brown waived any claims he might have against the bank and agreed that he and his wife Rosemary would give the bank mortgages on three properties that they jointly owned. This arrangement was negotiated so that the bank would continue financing Repro during the reorganization process.

On June 8, 1987, the Browns executed three mortgages that stated that they were given pursuant to the bankruptcy court's cash collateral order. Soon thereafter, the bank stopped advancing funds to Repro and the corporation was unable to reorganize.

On July 17, 1987, Gary Brown agreed to give the bank possession of Repro's collateral and began liquidating the corporation's assets. On September 16, 1987, the bankruptcy court issued an order stating that the bank was deemed to be in possession of all Repro's collateral subject to liens and directed the bank to liquidate the debtor's estate in a commercially reasonable manner.

Rosemary and Gary Brown sold some of Repro's assets in the months following, but with limited success. The bank then put up Repro's inventory and equipment for auction. The results were far below expectations, leaving a balance due on Repro's loans of approximately $1 million.

In 1988, the bank filed suit in the Superior Court of New Jersey to foreclose on two of the mortgages given by Rosemary and Gary Brown. The Browns counterclaimed, asserting breach of contract, breach of the duty of good faith, negligence, and promissory estoppel. The state court entered summary judgment in favor of the bank, struck the Browns' affirmative defenses and counterclaims, and directed the bank to submit affidavits as well as the mortgages so the amount due could be determined.

In response to a motion filed by the Browns, the state court reconsidered the summary judgment, but reaffirmed its previous ruling. Soon thereafter, the bank submitted a certification of the amount due. The Browns requested a hearing on that issue, in part because of an assertion that the bank did not adequately account for the proceeds of the Repro collateral liquidation.

On October 10, 1989, before a hearing could be held in the state court, Rosemary, but not Gary, Brown filed a Chapter 11 petition on her own behalf. The bank filed a motion to dismiss alleging that Rosemary's Chapter 11 petition had been filed in bad faith as demonstrated by her lack of an existing business, her lack of assets other than the mortgaged properties, her lack of a reasonable prospect of reorganizing, and her husband Gary's failure to join in the petition.

After a hearing, the bankruptcy judge (not the one to whom the Repro case had been assigned) denied the bank's motion and announced his intention to adjudicate certain matters that had already been considered by the state court, such as whether the mortgages were valid or procured by fraud. He also expressed concern about

whether the sale of Repro's assets had been conducted in a proper manner.

On appeal, the district court considered the denial of the bank's motion to be interlocutory and declined to consider the merits. We reversed, concluding that the bankruptcy judge's determination was final. *In re Brown,* 916 F.2d 120 (3d Cir. 1990).

On remand, the district court reversed the bankruptcy judge's order after determining that the "record [did] not support a finding that the debtor had a reasonable likelihood of rehabilitation" and, in the alternative, that Rosemary had filed her Chapter 11 in bad faith. 127 B.R. 108. In addition, the district court concluded that the bankruptcy judge exceeded his authority when he permitted the bankruptcy case to continue so that he could review the state court decision. The district court also held that an individual debtor could not utilize the provisions of Chapter 11, that option being available only to business entities.

Rosemary Brown appealed to this Court. She points out that after the district court filed its order, the Supreme Court held that individual nonbusiness debtors may file under Chapter 11. She also contends that the district court erred in its findings that she did not have a reasonable likelihood of rehabilitation and that her filing under Chapter 11 was in bad faith.

The bank argues that the doctrine of issue preclusion bars re-litigation of the issues decided in the state court and that the bankruptcy court did not apply the appropriate standard in denying the bank's motion to dismiss the petition.

### I.

In an appeal from an order of a bankruptcy judge, a district court applies the clearly erroneous test to factual findings and plenary review to questions of law. Mixed questions of law and fact must be divided into their respective components and the appropriate test applied. We use the same standards. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–03 (3d Cir.1981). In that sense, our review duplicates that of the district court and we view the bankruptcy court decision unfettered by the district court's determinations. *Id.*

### II.

As one of the reasons for reversing the bankruptcy judge's ruling, the district court assumed that an individual nonbusiness debtor could not file a Chapter 11 petition. The Supreme Court in *Toibb v. Radloff,* — U.S. ——, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991), decided that an individual debtor without "an ongoing business" could nevertheless utilize Chapter 11. That issue, therefore, has been resolved and we need not discuss it. The district court, however, cited alternative theories, unaffected by *Toibb,* for reversing the bankruptcy judge's ruling.

A review of the proceedings in the bankruptcy court, before and including that court's decision to deny the motion to dismiss Rosemary Brown's petition, reveals that the chief factor influencing the bankruptcy judge's decision apparently was his belief that he could review and possibly set aside the findings of the state court in the bank's foreclosure suit. We will therefore address that issue before considering whether the motion to dismiss should have been denied.

Before Rosemary Brown filed her bankruptcy petition, the state trial judge had granted the bank's motion for summary judgment and thereafter, on reconsideration, reaffirmed that ruling. Although the parties have not made the transcript of the original opinion of the state judge available to us, the extensive written opinion filed after reconsideration provides us with a guide to the issues addressed in the New Jersey court.

Because the Browns had produced extensive new evidence bearing on their contention that the bank had assumed the duty of monitoring Repro's accounts, the state judge revisited that issue. His scrutiny of the loan documents persuaded him that the Browns had failed to establish that the bank had a contractual duty or inherent

obligation to oversee Repro's decisions granting credits on accounts receivable. That practice was one of the substantial factors leading to a skewing of the collateral-to-debt ratio and Repro's subsequent financial distress. Moreover, the New Jersey court considered, but rejected, the Browns' allegations that the bank negligently failed to use available information bearing on the collateral-to-debt ratio.

The Browns had also asserted that the bank took unfair advantage of their lack of legal representation before and after Repro's bankruptcy. They contended that they would have been better served had they liquidated Repro initially instead of following the reorganization route. The state court found that scenario to be speculative at best and that counsel was engaged to represent Repro and not the Browns, although they owned Repro. There was no allegation that the bank selected Repro's counsel or that it deliberately took advantage of the Browns in their capacity as guarantors.

Noting that Repro was substantially in default, the state court found that the bank was entitled to proceed as it did. Furthermore, the court stated that it could not "conclude that the decision to proceed with [Repro's] bankruptcy, to make additional advances, [and] to require new security in the form of mortgages were unreasonable actions let alone taken in bad faith." No issue of bad faith or unfair dealing had been raised "which [was] triable on that question."

These brief references to the state court's detailed opinion demonstrate that the contentions Rosemary raised in bankruptcy had been litigated in the foreclosure suit. Yet, the bankruptcy judge queried "whether a fraud was perpetrated on the Browns in connection with the execution of those mortgages." The bankruptcy judge also said that he found it "surprising, if not amazing, that the Superior Court judge decided there were no genuine issues of material fact here."

The bankruptcy judge further questioned whether liquidation of the collateral was conducted in a commercially reasonable manner. At oral argument, both parties informed this Court that whether any credit was due the Browns as against the amount due the bank in the foreclosure was yet to be determined by the state court. The bankruptcy judge's concern on this point, therefore, was seemingly premature, but his comments on matters determined by the summary judgment disclosed a misapprehension on the application of issue preclusion.

■ Essentially, the question here is whether the bankruptcy court should permit litigation of matters that were adjudicated in the state court. Whatever doubt that may have remained that preclusive effect was to be given state court proceedings in bankruptcy cases was dispelled by the Supreme Court in *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). There, the Court noted that its prior cases had suggested, but not clearly stated, that collateral estoppel applied in bankruptcy proceedings. Observing that virtually every Court of Appeals had so held, the Court said, "[w]e now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Id.* 111 S.Ct. at 658 n. 11; *see also In re Braen,* 900 F.2d 621, 630 (3d Cir.1990).

Rosemary Brown does not challenge this general principle, but contends that its invocation is limited to situations in which a final judgment has been entered in the state court. She cites cases that are inapposite. *See, e.g., Clausen Co. v. Dynatron/Bondo Corp.,* 889 F.2d 459, 466 (3d Cir.1989) (finding no res judicata effect from an interlocutory order when another issue on the claim was still unresolved); *Credit Bureau Collection Agency v. Lind,* 71 N.J.Super. 326, 177 A.2d 36, 37 (App. Div.1961) (finding that interlocutory decisions are not appealable); *Margolis v. Clawans,* 54 N.J.Super. 472, 149 A.2d 257, 260 (App.Div.1959) (holding that the absence of any order or judgment in the record made preclusion inapplicable).

Generally, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment

under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *see also Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988). In this case, the order of the state court granting summary judgment on liability was not final for purposes of appeal, but that does not deny it preclusive effect in the bankruptcy court.

■ Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable. As the Supreme Court of New Jersey noted in *Hills Dev. Co. v. Township of Bernards*, 103 N.J. 1, 510 A.2d 621, 652 (1986), *"res judicata is applicable only when a final judgment is rendered, and the doctrine of collateral estoppel applies whenever an action is 'sufficiently firm to be accorded conclusive effect.'* Restatement (Second) of Judgments, § 13 at 132."

*Hills Development* is strong evidence that the Supreme Court of New Jersey is in agreement with section 13 of the Restatement (Second) of Judgments. Although we have discovered no cases from that Court specifically addressing the issue, we are confident enough that the Restatement will be considered expressive of New Jersey law on issue preclusion that we apply it here.

1 *Restatement (Second) of Judgments* § 13 (1982) reads in pertinent part: "[F]or purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Comment (g) observes that insistence on a final and fully appealed judgment can involve needless duplication and expense to decide the same issue or, alternatively, undue delay in a second action while the first action is brought to a complete finish. "In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment." In determining

whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed.

For further guidance, we turn to relevant federal cases. In *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir.1980), we pointed out that "[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts." Finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.* at 412 n. 8 (quoting *Lummus Co. v. Commonwealth Oil Refinery Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962)).

To the same effect, see *Swentek v. USAir, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 393–94 (7th Cir. 1986); *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 955 (2d Cir.1964) ("[W]e see no reason why in an appropriate case a ruling that is final on the issue of liability should not preclude the party against whom the decision ran from presenting further evidence on the issue there finally determined."); *McLendon v. Continental Group, Inc.*, 660 F.Supp. 1553, 1562 (D.N.J.1987); 1 *Restatement (Second) of Judgments* § 13, illustration 3; 11 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4434 (1981); *cf. Pye v. Department of Transp.*, 513 F.2d 290, 292–93 (5th Cir.1975) (applying collateral estoppel to taking issues that were litigated and fully appealed even though compensation had not yet been set on remand). *Contra Avondale Shipyards, Inc. v. Insured Lloyds*, 786 F.2d 1265, 1270–71 (5th Cir.1986) (partial summary judgment not preclusive because final judgment necessary for preclusion); *see also Luben Indus. v. United States*, 707 F.2d 1037, 1040 (9th Cir.1983) (interlocutory order did not give rise to offensive collateral estoppel on tax code interpretation when government

had not been given the opportunity to appeal first case).

The question is whether the state court's summary judgment order was sufficiently firm to have precluded the bankruptcy judge from questioning previously litigated issues, such as negligence of the bank in monitoring Repro's accounts, validity of the Brown mortgages, lack of personal representation of the Browns, and absence of disputed material facts. We are persuaded that issue preclusion is appropriate here.

The Browns were represented by counsel (in this case two separate firms) in the state court, and hearings were held on several occasions. The issues were genuinely contested, and the court gave no indication that the summary judgment was tentative or likely to be changed. When the state judge reaffirmed the summary judgment on liability, his opinion reflected an appreciation of the relevant facts and familiarity with the applicable law.

The summary judgment is sufficiently final so that it should be given preclusive effect as to the matters considered and decided in that phase of the controversy between the Browns and the bank. To litigate those issues again in the bankruptcy court would be the "kind of waste of judicial resources" that we referred to in *In re Braen*, 900 F.2d at 625. The questioned procedural errors of the state trial judge are matters to be reviewed in the New Jersey courts, rather than in the bankruptcy court.

■ As noted earlier, the credit that the Browns claim as a result of the bank's alleged mishandling of the Repro liquidation remains to be determined in the state court. The bankruptcy judge expressed some concern about this phase of the case. Conceivably, the bankruptcy court could be bound by the summary judgment as to liability, yet be free to adjudicate issues having to do with the amount due. We think that course of action would be inappropriate here.

The state court is familiar with the background of the case and has explored some of the facets that bear on the claimed credit. To some extent, therefore, allowing the bankruptcy judge to step in at this point would result in duplication of effort and added expense to the parties. Moreover, we see no reason why the state court would not be competent and impartial in making the necessary determinations.

In *In re Holtkamp*, 669 F.2d 505, 508–09 (7th Cir.1982), the Court of Appeals approved lifting the automatic stay to permit litigation of a dispute in state court when the petition was filed five days before the scheduled trial date there. The Court referred to a Senate Report that observed "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." S.Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836.

To the same effect, in *In re Olmstead*, 608 F.2d 1365, 1367–68 (10th Cir.1979), the Court of Appeals held that the bankruptcy judge had discretion to permit liquidation of a claim in state court absent prejudice to the bankrupt. "It is obvious, however, that the bankruptcy court will save considerable time, effort, and money by awaiting the outcome of the liability proceeding and reviewing facts there presented to liquidate and determine dischargeability of the debt." *Id.* at 1368; *see also In re Kemble*, 776 F.2d 802, 807 (9th Cir.1985); *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826–27 (N.D.Ill.1986).

We perceive no cognizable prejudice to the debtor in permitting the foreclosure proceeding to proceed to a conclusion in the state court. Nor can we overlook the impact of the flood of litigation pouring in on the bankruptcy courts, a development that requires that they carefully husband their resources. We conclude that in the circumstances it would not be consistent with a reasonable exercise of discretion by the bankruptcy court to supersede the exercise of jurisdiction by the New Jersey court.

### III.

Having determined that issue preclusion applies and that the bankruptcy court

should allow the state court to determine the amount due the bank, we now address the next question—whether the district court erred in reversing the bankruptcy judge's denial of the bank's motion to dismiss Rosemary Brown's petition under Chapter 11.

In its initial opinion, the district court concluded that the bankruptcy judge's order denying dismissal was not appealable. The opinion, however, did refer to the record, noting some of the factual questions, particularly with respect to the bank's assertions that the petition had been filed in bad faith.

The district court observed that the bankruptcy judge had made no factual findings and that bad faith is a predominately factual determination. "Because [the bank's] motion to dismiss the debtor's petition was filed at the inception of the case, there was simply insufficient evidence from which the bankruptcy court could conclude that the debtor intended to abuse the bankruptcy process."

In context, it is difficult to determine if this quotation expresses the appraisal of the district court as to its impression of the record, or whether the court was paraphrasing the bankruptcy judge's view of the case. The district court, however, did say that the appeal "is laden with factual questions" and that it would not grant leave to appeal from an interlocutory order "in the absence of a more fully developed factual record."

On remand, however, the district court in its second opinion found the record sufficient to support certain conclusions. The court held that Rosemary had not demonstrated a reasonable likelihood of rehabilitation. She had no cash flow and no source of income. If she received money at all, she received it from her husband Gary. All her assets were held jointly with Gary and, at the time the bankruptcy court denied the motion to dismiss, Gary had not filed a Chapter 11 petition. Based on these

observations and a review of the pertinent case law, the district court determined that Rosemary's petition was not filed in good faith and that it was unlikely that she would be rehabilitated or be able to reorganize.

Although not without some hesitancy, we are inclined to accept the district court's initial appraisal that the record contained insufficient findings and evidence to justify dismissal. To explain our uncertainty, we note some additional facts from the record. In rounded figures, the schedules filed by Rosemary show that she and her husband owned real estate at a market value of $790,000, less first mortgages of $120,000, leaving a net value of $670,000. The bank's claim is listed at approximately $1.1 million, leaving $430,000 not covered by collateral.

The Browns' claim of credits against the bank arising from the alleged improper sales of Repro's collateral appears unlikely to close this gap. In an affidavit filed with the bankruptcy court, Gary Brown stated that the bank sold inventory and equipment worth $340,000 for $28,000. Nevertheless, even if the Browns succeed totally in their claims for credits in the state court, it appears that there will still be a shortfall of more than $100,000.

The Browns' other assets appear inadequate to cover the deficiency. However, listed as assets are causes of action against the bank of $2 million and against the Browns' former attorneys for $80,000. The claim against the bank must be considered questionable in view of the state court's order dismissing the Browns' counterclaim. No details are available as to the claim against their former lawyers.

A further difficulty is that all of these assets and claims are jointly held. Because property held by the entireties may not neatly be divided in half for valuation purposes, Rosemary's financial picture perhaps is not even as favorable as might be assumed at first glance.[1]

1. We are aware that the Code provides the means for sale of a tenant by the entireties' interest without the joinder of a non-debtor spouse. *See* 11 U.S.C. § 363(h); *In re Persky,* 893 F.2d 15 (2d Cir.1989); *cf. Freda v. Commercial Trust Co.,* 118 N.J. 36, 570 A.2d 409, 414 (1990). However, we do not know if that would be a satisfactory way to reorganize in this case,

11 U.S.C. § 1112(b) provides that, on request from a party in interest, the court may dismiss a case "for cause including— (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; or (2) inability to effectuate a plan." Other factors are also listed, but the "list is not exhaustive" and courts should "consider other factors as they arise." S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5903; H.R.Rep. No. 595, 95th Cong., 1st Sess. 406 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6362.

The Supreme Court has said that "[h]owever honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *Tennessee Publishing Co. v. American Nat'l Bank*, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13 (1936). "[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988). "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *In re Canal Place Ltd. Partnership*, 921 F.2d 569, 577 (5th Cir.1991).

The district court cited the factors that establish the unlikelihood of Rosemary Brown's rehabilitation. In oral argument before this Court, her counsel further conceded that Gary's income was the "sole means of funding a reorganization plan."

We have substantial doubts that the debtor could have been rehabilitated and reorganized at the time the bankruptcy judge denied the motion to dismiss, but the record lacks the certainty needed for entry of judgment on appeal. Section 1112(b)(1) requires the moving party to prove continuing loss or diminution of the estate. *See* 5 *Collier on Bankruptcy* ¶ 1112.03[d][i] (L.King ed., 15th ed. 1991). The record does not have evidence on this point.

Section 1112(b)(2) requires the moving party to prove that it is unreasonable to expect that a plan can be approved. *Id.* ¶ 1112.03[d][ii]. Although Rosemary would have faced difficulty, nothing in the record in the brief two months before denial of dismissal establishes that the bank would reject all possible plans. Similarly, we think that the evidence, then existing, of bad faith was not strong enough to enable us to say that it was established as a matter of law.

It is significant that the motion to dismiss was presented just a few weeks after the petition was filed and before the posture of the case was clear. Moreover, because the bankruptcy judge's initial determination on this motion was influenced by a misapprehension of law as to issue preclusion, we believe that the correct procedure is to remand. To paraphrase what we said in *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 104 (3d Cir. 1981), we cannot affirm the district court's decision here in reversing the bankruptcy judge on an equivocal record "without violating the traditional allocation of differing competences to the various levels of our hierarchial judicial system."

■ In ruling on the appeal from the district court, we may not be governed by developments that have occurred since the bankruptcy court denied the motion to dismiss. *In re Holi–Penn, Inc.*, 535 F.2d 841, 843 n. 2 (3d Cir.1976); *In re Riddlesburg Mining Co.*, 224 F.2d 834, 836 (3d Cir.1955). Nevertheless, we need not blind ourselves to the fact that Rosemary's husband did subsequently file a Chapter 11 petition. Although both Rosemary and Gary Brown's petitions were dismissed as a result of the district court's order (a stay having been denied), our disposition of her appeal will require reinstatement of both petitions.

On remand, the decision on the proper course to follow should be guided by our

nor has Rosemary indicated any desire to follow the section 363(h) route. Counsel for Rosemary conceded that "as a practical matter Rosemary could not file a plan without Gary's partic-

ipation since all of their assets are jointly held." (Affidavit in Support of Motion to Extend Debtors' Exclusive Period To File a Plan, June 15, 1990).

determination that issue preclusion applies to the state court judgment on liability. The bankruptcy judge should also consider lifting the stay for the limited purpose of having the state court determine the amount due the bank. After that is resolved, the bankruptcy judge should review the case to determine if a reorganization is possible. *See In re Cardell,* 88 B.R. 627 (Bankr.D.N.J.1988); *cf. In re Roach,* 824 F.2d 1370 (3d Cir.1987) (Chapter 13).

The judgment of the district court will be reversed and this case will be remanded to the district court to be remanded to the bankruptcy judge for further proceedings consistent with this opinion.