**In re COLONIAL DAYTONA LIMITED PARTNERSHIP, Debtor.**

Bankruptcy No. 92–6351–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 28, 1992.

Charles M. Tatelbaum, for debtor.

Jose I. Astigarraga, U.S. Trustee, for American Sav. of Florida.

MEMORANDUM OF OPINION
ON MOTION TO DISMISS
FOR "CAUSE"

ALEXANDER L. PASKAY, Chief Judge.

THIS IS another all-too-familiar recurring scenario which involves Colonial Daytona Limited Partnership (Debtor), a limited partnership with one single asset, as usual an apartment house complex already involved in foreclosure. In the present instance, the challenge of the Debtor's right to seek and ultimately obtain the benefits designed by Congress through Chapter 11 of the Bankruptcy Code, is interposed by the mortgagee, American Savings of Florida, F.S.B. (American Savings). American Savings seeks a dismissal of this Chapter 11 case based on the contention that there is "cause" for dismissal pursuant to § 1112(b)(1) of the Bankruptcy Code, the "cause" being the contention that this Chapter 11 case was filed in bad faith. The basic facts relevant to the resolution of the Motion under consideration are without dispute and part of this record can be summarized as follows.

As noted earlier, the Debtor is a limited partnership and is the owner of a 208–unit apartment house complex located in Daytona Beach, Florida, in the Jacksonville Division of the Middle District of Florida. The Debtor has no employees and does not conduct any business in the orthodox sense. The complex is managed by a management company owned by insiders of the Debtors. The complex is encumbered by a first mortgage on which there is currently an outstanding balance of $7.2 million. American

Savings is a holder of a wrap-around second mortgage on which there is currently an outstanding balance of $1.8 million. There is no serious dispute that the complex is heavily over-leveraged and the best estimate of its value is between $4.1 and $4.4 million.

The complex is essentially fully rented, yet does not generate sufficient net cash to service the two mortgages by paying interest, let alone paying reduction of principal. In light of currently prevailing market conditions, the likelihood to improve the revenue by increasing the rent is remote if not nil. According to the best estimate, the net rentals are expected to be $30,000 per month or a maximum of $150,000 for the next three months, which in turn would create an additional shortfall on the second mortgage by the end of September in the amount of $226,000.

In this connection, it is appropriate to note that the construction of the complex was financed through the issuance and sale of tax exempt bonds in the approximate amount of $7 million. To secure the bonded indebtedness, Centerbanc, the predecessor of American Savings, issued a letter of credit on which the Trustee managing the bond issue was entitled to draw and pay the principal and interest payments on the bonds which became due if the revenue from the project was insufficient. There is hardly any dispute that the complex did not generate sufficient surplus to meet its obligations.

Since March, 1991, American Savings paid out more than $1 million pursuant to the demand by the Trustee of the bond issue. The next demand date to draw on the letter of credit by the Trustee is October 1, 1992, requiring the payment of $376,675.00, after which American Savings will have accumulated a possible shortfall of close to $1 million.

In January, 1991, American Savings filed a suit in the Circuit Court for Volusia County, Florida, and sought to foreclose its second mortgage encumbering the apartment complex owned by the Debtor. In July of 1991, the Circuit Court entered an Order Sequestering Rents. In compliance with this Order, the Debtor in fact paid American Savings the sum of $440,000.00, albeit it also used $20,000.00 from gross revenues to pay a retainer for counsel who filed the Petition for Relief under Chapter 11 of the Bankruptcy Code. A Motion To Appoint A Receiver filed by American Savings was scheduled to be heard by the Circuit Court, but on May 7, 1992, just a few days prior to the scheduled hearing, the Debtor filed its Petition for Relief under Chapter 11 which, of course triggered the automatic stay imposed by § 362 of the Bankruptcy Code, which brought the foreclosure suit to a halt.

The Debtor has already filed its Disclosure Statement and Plan of Reorganization. The Plan is based on the Debtor's expectation to resort to the cramdown provision of § 1229(b)(1) and (2) for the obvious reason that the property is heavily overleveraged and American Savings will oppose the Debtor's Plan. American Savings is clearly undersecured and the Debtor does not anticipate securing a favorable vote by American Savings on a Plan which proposes to pay two cents on the dollar on the unsecured deficiency claims of American Savings and to the other unsecured creditors in the same class over a two-year time frame.

Based on these undisputed facts, it is the contention of American Savings that under the well-developed case law relevant to the matter under consideration, the conclusion is inescapable that this Petition was filed by the Debtor in "bad faith" and, therefore, it should be dismissed for "cause" pursuant to § 1112(b) of the Bankruptcy Code.

It cannot be seriously argued that a mechanical application of the factors set forth in *Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986), indicates that this case has most of the hallmarks of bad faith. This in turn would compel the conclusion that this Chapter 11 case was in fact, filed in bad faith and should be dismissed. However, it is equally recognized that not one single factor set forth in *Little Creek, supra,* is determinative of the issue of the lack of good faith of a debtor seek-

ing relief under Chapter 11 of the Bankruptcy Code. *In re Natural Land Corporation*, 825 F.2d 296 (11th Cir.1987); *In re Albany Partners Ltd.* 749 F.2d 670 (11th Cir.1984). While *Little Creek* is still well-recognized as persuasive authority, it is equally true that there is nothing inherently improper for a debtor with one single asset, generally an income-producing commercial property to attempt to reorganize its affairs under the rehabilitative provisions of the Bankruptcy Code. In the last analysis, the key considerations are (1) the Debtor's motivation to file the Petition; (2) the economic vitality of the Debtor; (3) the Debtor's real need to reorganize and (4) the ability of the Debtor to achieve reorganization.

In the present instance, there is hardly any doubt that the sole and only reason the Debtor filed its Petition was to prevent the almost inevitable, i.e., appointment of a receiver and ultimately a loss of its one and only asset through foreclosure. This is basically nothing more than a two party dispute. There is no evidence that this Debtor has any real need to reorganize its debts simply because it has no debt structure of any consequence. According to the Schedule of Liabilities fixed by the Debtor, it has approximately 33 unsecured nonpriority creditors, with claims ranging from $5.94 to $2,519.24, with the unsecured nonpriority debt totalling $14,457.45. According to the Schedules, the Debtor owes these amounts for nothing more than debts incurred in connection with the day-to-day operations of the property, such as irrigation service, carpet replacement, advertising, appliance parts, wallpaper, maintenance service, uniform rental, and phone rental.

The sole asset of this Debtor is so heavily leveraged that it never had and still does not have a salvageable economic value which merits any favorable consideration. What is more important, there is hardly any doubt that this Debtor could never be able to obtain confirmation of any Plan of Reorganization unless it is able to use the cramdown provision, § 1129(b) of the Bankruptcy Code, a proposition that is highly doubtful. This is so because the Debtor could never satisfy the absolute priority rule, § 1129(b)(2)(B) and (C)(ii). Thus, this lack of a realistic possibility of an effective reorganization is further supportive of the conclusion that the Petition was filed in bad faith. *In re Punta Gorda Associates*, 143 B.R. 281 (Bankr.M.D.Fla.1992).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that American Savings' Motion to Dismiss Proceeding or in the Alternative, for Relief from the Automatic Stay is granted and this Chapter 11 case is hereby dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor shall pay the United States Trustee any outstanding fees due.

DONE AND ORDERED.