**COLONIAL DAYTONA LIMITED PARTNERSHIP, Appellant,**

v.

**AMERICAN SAVINGS OF FLORIDA, F.S.B., Appellee.**

No. 92–1411–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

April 1, 1993.

Michael C. Markham, Charles Martin Tatelbaum, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, for appellant.

Jose I. Astigarraga, West Palm Beach, FL, for appellee.

KOVACHEVICH, District Judge.

This cause is before the Court on appeal from the Order granting Appellee, American Savings of Florida's Motion to Dismiss for Cause entered on August 28, 1992, 144 B.R. 924, nunc pro tunc June 24, 1992, by Chief Bankruptcy Judge Alexander L. Paskay. Also before this Court for consideration is Appellant's Motion To Strike Exhibits. (# 77)

### STANDARD OF APPELLATE REVIEW

Upon review of bankruptcy proceedings, this Court will not set aside findings of fact unless such findings are clearly erroneous. F.R.B.P. 8013; *In re Downtown Properties, Ltd.*, 794 F.2d 647 (11th Cir.1986). While conclusions of law are reviewed *de novo, In re Owen*, 86 B.R. 691 (M.D.Fla.1988), discretionary rulings made pursuant to the Bankruptcy Code are reviewable only for abuse of discretion. *In re Northwest Place*, 108 B.R. 809 (Bankr. N.D.Ga.1988), *following In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984).

### *FACTS*

Appellant/Debtor, Colonial Daytona Limited Partnership (Colonial Daytona) is the owner of a 208–unit apartment house complex located in Daytona Beach, Florida. The complex is Colonial Daytona's sole asset. The Debtor does not conduct any business other than ownership of this property, and does not have any employees. The property is operated by a management company owned by insiders of the Debtor.

Appellee, American Savings of Florida (American Savings) is the holder of a wrap-around second mortgage on the property with an outstanding balance of $1.8 million. The complex is also encumbered by a first mortgage held by Barnett Bank of Florida (Barnett), with a current outstanding balance of $7.2 million.

The first mortgage represents the financial arrangement originally used to fund construction of the complex. Barnett issued and sold tax exempt bonds in the approximate amount of $7 million. Ameri-

can Savings issued a letter of credit on which Barnett, as the Trustee managing the bond issue, was entitled to draw, in order to pay the principal and interest payments on the bonds as they became due, if the revenue from the apartment complex was insufficient to meet the debt service. Thus, while American Savings technically holds only a second mortgage on the property, American Savings is guaranteeing payment to the first mortgage holder and trustee of the bond issue, Barnett, through its letter of credit.

Although the record supports the possibility of a dispute between the parties as to the value of the complex, by either valuation figure the complex is heavily overleveraged, and the Debtor has no equity in the property.

The apartment complex is fully rented and does not generate sufficient revenues to service the two mortgages by paying either interest or principal. Further, the revenues have been insufficient in the past year to pay for either property taxes or the regular maintenance of the building. There is little likelihood of an increase in revenue by raising rents in the foreseeable future, due to market conditions.

Since March, 1991, American Savings has paid more than $1,376,675.00 in draws to Barnett, as the trustee of the bond issue, pursuant to the letter of credit issued by American Savings.

In January 1991, American Savings filed suit in the Circuit Court for Volusia County, Florida, in order to foreclose its second mortgage on the Debtor's property.

In July of 1991, the Circuit Court entered an order sequestering the rents of the property. From August of 1991 until it filed bankruptcy, Colonial Daytona paid revenues from the complex to American Savings once a month, pursuant to the sequestration order. Although the Debtor has paid approximately $440,000 in sequestered rents, American Savings has accumulated an approximate $1 million shortfall through its payments on the letter of credit to Barnett, and will continue to accrue an even greater shortfall, as scheduled payments on the bonds are made, and Barnett demands payment from American Savings.

Colonial Daytona's scheduled date for payment of sequestered rents was the 10th of the month. The Petition for Relief under Chapter 11 was filed by Debtor, Colonial Daytona, on May 7, 1992, thereby triggering the automatic stay pursuant to § 362 of the Bankruptcy Code. Thus, the $20,000 in revenues that Colonial Daytona had stockpiled for payment to American Savings on May 10, 1992 were used instead by the Debtor to pay a retainer for counsel in the bankruptcy case. Subsequently, a similar payment system was reinstated between the Debtor and American Savings through a stipulation as to the use of cash collateral.

In the state court foreclosure proceeding on April 6, 1992, American Savings, along with Barnett, filed Plaintiffs' Verified Motion For Appointment Of Receiver, and set the motion for hearing on May 14, 1992. The hearing, however, was never held because the Debtor filed its Petition in Bankruptcy Court on May 7, 1992, thus staying the state court foreclosure case.

After Colonial Daytona filed its Petition for Relief, the Chapter 11 case moved forward toward reorganization; the Debtor attended the required 341 Meeting of Creditors, a representative of the Debtor was deposed by American Savings, and a stipulation as to the use of cash collateral was reached between the Debtor and American Savings. A motion to dismiss, or in the alternative, motion for relief from the automatic stay was filed by American Savings on May 26, 1992, and noticed for hearing on June 24, 1992. On June 24, 1992, just prior to the hearing, the Debtor filed its Disclosure Statement and Plan of Reorganization.

Although the Debtor has listed a great number of unsecured creditors on its Schedule of Liabilities, the claims are small relative to the secured debt of American Savings and Barnett, ranging in value from $5.94 to $2,519.24. Most of the unsecured creditors are residents of the complex who have a claim for their security deposit.

The Debtor does list a secured creditor other than American Savings and Barnett, A.I. Credit Corporation (A.I. Credit), However, the Debtor's attorney, at the hearing on the motion to dismiss, admitted that the A.I. Credit debt is an obligation secured by an assignment of the notes of various limited partners, and that the Debtor doesn't even have the documentation evidencing the debt. The notes were drafted by entities affiliated with the Debtor, and it is possible that the debt belongs to those related entities. Additionally, A.I. Credit had not filed any suit in an effort to collect on any debt owed to it by Colonial Daytona prior to the bankruptcy filing. Further, A.I. Credit filed a notice of appearance in the bankruptcy case, received service of the motion for dismiss or lift the stay, and did not oppose the motion.

The Debtor's Plan of Reorganization proposed to pay two cents on the dollar on the unsecured deficiency claims of American Savings, and to all other unsecured creditors in the same class, over a two-year time frame. The Debtor's expectation of successful reorganization depended upon the Debtor's ability to use the cramdown provisions of § 1229(b)(1) and (2) of the Bankruptcy Code.

Since the complex is highly overleveraged, and American Savings continues to accumulate a shortfall due to its payment obligation to Barnett, American Savings is seriously undersecured, and would certainly have opposed the Debtor's Plan. American Savings' chances of collecting on the Debtor's obligation were much less favorable under the Plan than its chances of recouping at least some of the debt through the state foreclosure proceeding. Therefore, it is unlikely that the Debtor could have obtained confirmation of its Plan and proceeded through reorganization.

Further, the Debtor's Plan relied heavily on the infusion of new value by its limited partners in order to fund even the small distribution it set forth. Because of the status of the partnership at the time the Plan was written, as evidenced by statements made by the Debtor's attorney at the hearing regarding the limited partners' attempts to sell their interests, the cash infusion was, at best, a rather speculative proposition.

On June 24, 1992 the Bankruptcy Court granted American Savings' Motion To Dismiss For Cause, pursuant to § 1112(b) of the Bankruptcy Code, finding that the Debtor had filed its Petition for Relief under Chapter 11 in bad faith.

On September 2, 1992 the Appellant filed its notice of appeal from the Bankruptcy Court's order dismissing its Petition for Relief under Chapter 11.

On October 27, 1992, Appellant filed its Motion To Strike Exhibits, requesting this Court issue an order striking Appellee's exhibits submitted by Appellee, American Savings, at the Bankruptcy Court hearing June 24, 1992, and subsequently included in the record on appeal.

### ISSUES

I. WHETHER AMERICAN SAVINGS CARRIED ITS BURDEN OF PROOF ON THE MOTION TO DISMISS FOR CAUSE.

II. WHETHER THE DEBTOR WAS GIVEN ADEQUATE OPPORTUNITY FOR HEARING ON THE MOTION TO DISMISS.

III. WHETHER THE BANKRUPTCY COURT CONSIDERED THE TOTALITY OF CIRCUMSTANCES IN RULING ON THE MOTION TO DISMISS FOR CAUSE.

IV. WHETHER THE RECORD CONTAINS SUFFICIENT EVIDENCE TO SUPPORT A FINDING OF BAD FAITH.

V. WHETHER APPELLEE, AMERICAN SAVINGS' EXHIBITS SHOULD BE STRICKEN FROM THE RECORD OF APPEAL.

### DISCUSSION

■ Section 1112(b) of the Bankruptcy Code provides that, on request from a party of interest, the court may dismiss a case for cause. "Cause", pursuant to § 1112(b),

includes: "1) continuing loss to or diminution of the estate and the absence of any reasonable likelihood of rehabilitation; 2) the inability to effectuate a plan; or 3) unreasonable delay by the debtor that is prejudicial to creditors." Several other possible grounds supporting dismissal for cause are listed in § 1112(b), but the list is not exhaustive and "the court may consider other factors as they arise and use its equitable powers to reach an appropriate result in individual cases." *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir. 1984), *quoting legislative history* H.R.Rep. No. 595, 95th Cong., 1st Sess. 406 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6362. Thus, the court is given judicial discretion to determine what factors shall constitute "cause" under the circumstances of each case. Several courts, including the Eleventh Circuit, have found that the Debtor's bad faith in filing its petition for relief constitutes cause for dismissal of the bankruptcy case. *In re Albany Partners, Ltd.,* 749 F.2d at 674; *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir.1988).

■ There is no particular test for determining whether a debtor has filed its petition in bad faith, although several circumstantial factors occurring together may be indicative of bad faith filing. See *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1394 and *In re Albany Partners, Ltd.,* 749 F.2d at 674. The Debtor's bankruptcy case exhibited most of these factors, according to the Bankruptcy Court's findings of fact, including the following:

1) The Debtor has only one asset, the apartment complex, and conducts no other meaningful business operations;

2) The Debtor has unsecured creditors whose claims are small in relation to the secured claims of American Savings and Barnett Bank;

3) The Debtor has no employees;

4) The Debtor's financial problems involve essentially a dispute between the Debtor and one other party, American Savings, as second mortgage holder and guarantor of the first mortgage holder, Barnett Bank.

5) The timing of the Debtor's filing evidences an intent to delay the state circuit court foreclosure proceedings and to frustrate American Savings' efforts to enforce its rights in the property.

6) The Debtor's case presents no realistic possibility of effective reorganization, in that the Debtor's sole asset is highly overleveraged and not generating enough revenue to fund either its debt service or reorganization. Further, the Debtor's hopes for confirmation of its Plan Of Reorganization were dependent on precarious events such as the Debtor's ability to (a) successfully use the cramdown provisions of the Bankruptcy Code and (b) obtain new infusions of cash from limited partners whose status as continuing partners was in question.

See *In re Albany Partners Ltd.,* 749 F.2d at 674 and *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1394-95. Further, these factors follow the rationale of possible grounds for dismissal for cause listed in § 1112(b)(1), (2), and (3) of the Bankruptcy Code.

## I.

As its first assignment of error, the Debtor asserts that American Savings failed to carry its burden of proof on the motion to dismiss for cause. The Debtor suggests that a simple review of the hearing transcript in this case indicates that American Savings did not place sufficient evidence in the record to prove the Debtor's bad faith in filing its petition. Instead, Colonial Daytona maintains the facts merely reflect that its Chapter 11 proceeding is a single asset case, which, without more, does not inherently prove the Debtor's bad faith.

Specifically, the Debtor alleges American Savings failed to put forth substantial evidence as to (1) the Debtor's intent or motive in filing the petition; (2) the extent to which the Debtor is an ongoing concern; and (3) the ability of the Debtor to reorganize. Further, the Debtor assigns error in that American Savings failed to offer any testimonial evidence at the dismissal hear-

ing to prove the facts presented by American Savings as uncontested facts.

█ If a motion to dismiss under § 1112(b) is contested by the nonmovant, the movant must prove, by a preponderance of the evidence, that cause exists for dismissal of the debtor's bankruptcy case. *In re A–K Enterprises, Inc.*, 111 B.R. 149, 150. This Court finds that, based upon the Bankruptcy Court's findings of fact, American Savings met its burden of proof on its Motion To Dismiss For Cause.

The Bankruptcy Court's findings reflect its adoption of the undisputed facts presented to it by American Savings. In fact, virtually all of these facts are characterized as undisputed by the Appellant in the brief it filed for this appeal. These facts indicate that it is more likely than not that the Debtor's intent in filing its Petition was to avoid the upcoming hearing in the state court foreclosure case. Further, the undisputed facts clearly show that the Debtor is not able to pay even normal operating expenses, let alone service the debt on the complex, thus reflecting the Debtor's inability to operate as an on-going concern. Finally, the facts prove, more likely than not, that the Debtor would not have been able to confirm its Plan and proceed through the steps of reorganizing.

█ Further, the Bankruptcy court advised both parties at the outset that it would first hear all undisputed facts, and then hear evidence only with regard to contested facts. Although there were a few facts that the Debtor's attorney stated were disputed, when Judge Paskay heard the Debtor's arguments as to those facts, he determined either that the fact in question was not material, or that the fact not actually disputed. Thus, this Court finds the Debtor's assignment of error regarding American Savings' failure to present testimony at the dismissal hearing is also without merit.

## II.

█ The Debtor contends, as its second assignment or error, that it was not given an adequate opportunity for hearing on the motion to dismiss. The Debtor cites F.R.B.P. 9014, which states that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Colonial Daytona asserts that it was not given an adequate opportunity for hearing in that the Bankruptcy Court did not listen to the Debtor's testimony and did not give the Debtor an opportunity to dispute facts submitted by American Savings' as uncontested facts. Here again the Debtor refers this Court to the hearing transcript as evidence that it was denied an adequate opportunity for a hearing.

Appellee, American Savings filed its motion to dismiss on May 22, 1992, and served a copy of the motion to the Debtor and all parties in interest. The Clerk of the Bankruptcy Court scheduled the matter for hearing, and served a notice of hearing to all parties of interest on May 26, 1992. The hearing on the motion was subsequently held on June 24, 1992. As the hearing transcript indicates, in the interest of judicial economy, the Bankruptcy Court requested the parties first give the Court all purportedly uncontested facts bearing on the issue of bad faith cause for dismissal, and then proffer evidence only if a material fact was deemed disputed. As previously stated, although some facts were asserted by Debtor's counsel as disputed, after further inquiry, the Bankruptcy Court found that the facts at issue were either immaterial or not truly disputed.

There is no question that the Debtor had reasonable notice of the hearing. The Debtor had plenty of time to prepare its case against American Savings' motion. If the Debtor knew of material facts that were in dispute, the Debtor's attorney had the opportunity both at the beginning of the hearing, and during the presentation of the Debtor's opposition to the motion, to bring these facts to the Bankruptcy Court's attention and to formally proffer evidence. Except for the few facts the Bankruptcy Court deemed either immaterial or not in dispute, the Debtor raised no issues of material fact that were contested, and failed to formally proffer any evidence at all. It was not until the Bankruptcy Court had

already ruled in favor of the movant that the Debtor stated for the record that there were "facts in dispute".

Although there are discrepancies between the record of this case and the Bankruptcy court's opinion as to valuation of the complex, this item is of limited significance, and does not rise to the level of clear error. The Bankruptcy Court's determinations as to the other so-called disputed facts are, in this Court's judgment, free from error.

Further, although F.R.B.P. 9014 states that reasonable notice and opportunity for hearing shall be given to the party against whom relief is sought, the terms "notice" and "hearing" have a particular meaning within the context of bankruptcy. The Bankruptcy Code construes "after notice and hearing" to mean after "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances ...". 11 U.S.C. § 102(1)(A). This Court finds that, under the circumstances of this case, the notice and hearing afforded both parties with regard to American Savings' motion to dismiss was both reasonable and appropriate. *See In re E. Gene Wade and Joyzelle I. Wade v. State of Arizona,* 948 F.2d 1122 (9th Cir.1991).

### III.

As its third assignment of error, the Debtor maintains that the Bankruptcy Court failed to consider the totality of circumstances surrounding its filing of the Petition for Chapter 11 relief. Colonial Daytona sets forth three specific factors it asserts the Bankruptcy Court failed to consider, which, if considered, would have led the Bankruptcy Court to deny American Savings' motion to dismiss. These factors are as follows: (1) the Debtor had problems with its former general partners; (2) the Debtor and American Savings negotiated for three years prior to American Savings filing foreclosure; and (3) The Debtor sincerely desires to reorganize its indebtedness with American Savings and Barnett Bank.

Since there is no particular test for determining whether a debtor has filed a petition in bad faith, courts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the Bankruptcy Code's reorganization provisions. *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1194. Thus, the court has judicial discretion to evaluate the totality of circumstances in each case and determine whether those circumstances indicate a bad faith filing by that debtor. This determination, since it is discretionary, will only be reversed by this Court if it finds the Bankruptcy Court has abused its discretion.

The Bankruptcy Court, as evidenced both by the hearing transcript and the Order of Dismissal, methodically went through all the hallmarks of bad faith filing. Additionally, the transcript indicates that the Bankruptcy Court did indeed consider the factors listed by the Debtor. This Court finds no abuse of discretion by the Bankruptcy Court in its decision in light of these factors.

Moreover, this Court finds that the Debtor's negotiations with American Savings prior to the filing of foreclosure are irrelevant with regard to the issue of the Debtor's bad faith. Similarly, the Debtor's problems with its previous general partners are also immaterial to American Savings' motion to dismiss. Further, the Debtor's sincere desire to reorganize means little without the Debtor's actual ability to reorganize. *See Matter of Little Creek Development Co.,* 779 F.2d 1068, 1073 (5th Cir.1986); *Tennessee Publishing Co. v. American National Bank,* 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13 (1936).

### IV.

In its final assignment of error, the Debtor asserts that the record contains insufficient evidence to support a bad faith dismissal. The Debtor suggests that several of the Bankruptcy Court's conclusions were in error.

First, the Debtor cites *In re Brown,* 951 F.2d 564 (3rd Cir.1991) for the proposition that the record in this case lacks the certainty needed for entry of an order of dismissal. *In re Brown* is clearly distin-

guishable from the case at bar in that the Debtor's bankruptcy case has proceeded through the preliminary steps toward reorganization, and it is clear that an effective reorganization of this Debtor's assets is highly unlikely. By contrast, the debtor's bankruptcy case in *Brown* had not yet progressed to the point where such a determination could be made, principally because the debtor had not yet filed its Plan of Reorganization and Disclosure Statement.

■ Further, the test applied for bad faith in *Brown* is substantially different from that applied by the Eleventh Circuit in *Phoenix Piccadilly* and *Albany Partners, Ltd. Brown* required the movant to specifically prove either (a) the continuing loss or diminution of the estate, or (b) that it is unreasonable to expect that a plan can be approved. By contrast, the Eleventh Circuit has developed a looser, totality of circumstances test, giving the court broader discretion to consider all factors evidencing bad faith. Therefore, the Debtor's reliance on *In re Brown* is misplaced.

■ Secondly, the Debtor questions the Bankruptcy Court's factual finding as to the value of the property. Although it appears from the record that there may be a dispute as to valuation, the dispute is immaterial in that the property is overleveraged by either the Debtor's figure of $5.2 million or American Savings' figure of between $4.1 and $4.4 million. Further, the fact that the property is overleveraged by either party's estimation precludes the need for evidence as to value, despite the Debtor's assertions that the Bankruptcy Court should have heard evidence on this issue.

■ Next the Debtor attempts to cast doubt on American Savings' status as a secured creditor because it holds merely a second, wrap-around mortgage on the property. American Savings' obligation to Barnett encompasses the first mortgage. American Savings is rapidly assuming more and more of the first mortgage indebtedness, as the bond payments become due and Barnett draws on American Savings' letter of credit. Both American Savings and Barnett were joined as Plaintiffs

in the state court foreclosure proceedings, although American Savings, as a guarantor to Barnett, is the party primarily interested in pursuing its rights in the property. The Debtor's attempt to characterize American Savings as anything other than a secured creditor with the primary interest in the property is nonsense.

■ The Debtor also finds error in the Bankruptcy Court's finding that the case is basically nothing more than a two party dispute. Appellant again mentions Barnett's interest, A.I. Credit's claim, and the fact that the Debtor has actively participated in the bankruptcy cases of its former general partners in an effort to find more than one party pursuing its claims against the Debtor.

The record reflects, however, that the Debtor filed its Petition just a week prior to the hearing in the state court foreclosure case regarding appointment of a receiver, and obviously in an attempt to stall those proceedings. Because of the economic realities of the situation, American Savings is the party with the motive to pursue the collateral. However, this does not mean that Barnett, as the superior mortgage holder, opposes American Savings' attempt to collect. On the contrary, Barnett was being joined as Plaintiff in the state foreclosure case just prior to the Debtor filing bankruptcy. Further, neither A.I. Credit, nor the Debtor's previous general partners, were pursuing any collection suits against the Debtor when it filed its Petition for Relief. Thus, this case does in fact boil down to a two party dispute between the Debtor and American Savings.

■ Finally, the Debtor's last two suggestions of error as to the sufficiency of the record deal with the Bankruptcy Court's findings of fact as to the Debtor's ability and need to reorganize. As previously stated, this Court will not reverse the Bankruptcy Court's findings of fact absent a finding of clear error by the Bankruptcy Court. This Court finds no error in Bankruptcy Court's conclusions with regard to the Debtor's ability and need to reorganize.

 

As the Fifth Circuit noted "[the] Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *In the Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986).

The record in this case suggests that the Debtor planned its escape into Bankruptcy Court almost a full month before filing, and just in time to avoid the upcoming hearing in state court regarding appointment of a receiver for the property. The Debtor's use of complex revenues to pay its attorney's retainer for the bankruptcy case, when such revenues were to be paid to American Savings in two days, pursuant to the sequestration of rents order, illustrates the Debtor's bad faith in filing its Petition as well as any other fact previously mentioned.

## V.

■ Appellant requests that this Court strike exhibits submitted by American Savings to the Bankruptcy Court at the June 24, 1992 hearing, and subsequently included as part of the record on appeal. Appellee, American Savings requests this Court to refrain from striking the exhibits. Appellee suggests that the Appellant relied on at least one of the exhibits at the hearing, and thus should be estopped from now having the exhibits stricken, even though the exhibits were not admitted into evidence.

This Court, in its decision, has not relied upon the exhibits in question. Since the exhibits were not admitted into evidence and the Bankruptcy Court relied on what it determined to be undisputed facts, this Court hereby strikes the Appellee's exhibits from the record on appeal. Accordingly it is

**ORDERED** that the Bankruptcy Court's Order granting American Savings Of Florida's Motion To Dismiss For Cause is hereby **AFFIRMED.** Further, Appellant, Colonial Daytona's Motion To Strike American Savings' Exhibits is hereby **GRANTED.**

DONE and ORDERED.