SINGER FURNITURE ACQUISITION CORP., Appellant,

v.

SSMC INC. N.V., Appellee.

SSMC Inc. N.V., Appellant,

v.

Singer Furniture Acquisition Corp., Appellee.

Nos. 95–1452–Civ–T–21–E, 96–1021–Civ–T–25B.

United States District Court, M.D. Florida.

Sept. 28, 2000.

## MEMORANDUM AND ORDER

YOUNG, District Judge.[1]

In this consolidated bankruptcy appeal, Singer Furniture Acquisition Corp. ("Singer"), the potential debtor, and SSMC Inc. N.V. ("SSMC") each appeals orders entered by the United States Bankruptcy Court for the Middle District of Florida. Singer takes issue with two orders in particular. First, Singer appeals a July 13, 1995 dismissal order, whereby the Bankruptcy Court held that Singer's Chapter 11 petition was filed in bad faith and must be dismissed. Second, Singer appeals a July 26, 1995 order denying Singer's motion for sanctions against SSMC and its counsel for their allegedly willful violation of the automatic stay provisions of the Bankruptcy Code. See 11 U.S.C. § 362. For its part, SSMC appeals the Bankruptcy Court's March 14, 1996 order denying SSMC's motion, pursuant to Fed.R.Bankr.P. 9011, seeking sanctions against Singer for Singer's bad faith filing.

### I. Facts & Procedural History

During the spring of 1995, Singer was a defendant and compulsory counterclaimant in a civil action brought by SSMC entitled *SSMC, Inc. N.V. v. Steffen* in the United States District Court for the Western District of Virginia (Kiser, C.J.). In that matter, SSMC asserted various causes of action against Singer, Terri Steffen, Singer Furniture Company, and members of Singer Furniture Company's management. SSMC alleged, among other things, that the defendants engaged in a fraudulent scheme to circumvent SSMC's security interest in Singer Furniture Company, the stock of which Singer had pledged to SSMC to secure a $44,600,000 debt owed by Singer to SSMC in exchange for SSMC's sale of Singer Furniture Company to Singer.[2]

During the pendency of the Virginia matter, Singer made three unsuccessful attempts either to stay or to transfer the action from Virginia to Florida. See Notice of Proffer of Exs., Ex. D, Ex. E ¶ j, Ex. F (Bankruptcy Proceedings); Notice of Proffer of Aff. ¶ 13 (Bankruptcy Proceedings). After the parties completed discovery in the Virginia matter, the court heard argument from all parties regarding their respective motions for summary judgment on April 13, 1995. See Notice of Proffer of Aff. ¶ 17 (Bankruptcy Proceedings). Thirteen days before trial was to commence in Virginia, and while the summary judgment motions were *sub judice*, Singer filed its Chapter 11 petition on May 2, 1995.[3] Then, at a pretrial conference previously scheduled in the Virginia matter on May 4, 1995, Judge Kiser asked counsel for SSMC whether he thought the trial in the Virginia matter should go forward in light of Singer's bankruptcy petition. Counsel for SSMC responded that it wished to proceed against defendants other than Singer and that SSMC believed that it was entitled to relief against the defendants who were not protected by the automatic stay occasioned by Singer's filing. See Notice of Proffer of Exs., Ex. P at 2–3 (Bankruptcy Proceedings). These defendants included Steffen and the other holders of the bulk of the shares of Singer Furniture Company. Counsel for Singer Furniture Company and counsel for Steffen separately told the court that, in their

---

1. Of the District of Massachusetts, sitting by designation.

2. Further details on this scheme are provided in Part III.B. *infra.*

3. Further details regarding Singer's petition and schedules are provided in Part III.A. *infra.*

view, trial could not go forward without Singer. Counsel for Singer Furniture Company's officers, however, agreed with SSMC's counsel that SSMC could obtain the equitable relief it was seeking without Singer. *See id.* at 4–5. After hearing from counsel, Judge Kiser then stated that he had been considering the parties' summary judgment motions and that he had drafted an opinion thereon. He then explained that he would grant summary judgment to SSMC, placing all of the stock of Singer Furniture Company in SSMC's name. *See id.* at 10–23. Judge Kiser then decided to enter an immediate order (the "Virginia Order") in accordance with the draft opinion he had just previewed, which was finalized and signed that day. *See* Br. for Appellant, Ex. A.

On the same day of the pretrial conference in Virginia, SSMC filed a motion seeking the dismissal of Singer's bankruptcy case as having been commenced in bad faith. *See* Mot. to Dismiss Chapter 11 Pet. (Bankruptcy Proceedings). Although SSMC requested that the motion be expedited, Singer explicitly requested the Bankruptcy Court to refrain from hearing the motion on an emergency basis. The hearing was rescheduled from May 10 to June 28. On June 28, 1995, Chief Bankruptcy Judge Paskay conducted a hearing on the motion to dismiss. Judge Paskay began the hearing by asking counsel for SSMC to articulate facts which justified dismissing the petition. *See* Tr. of Hr'g of Mot. to Dismiss at 5 (Bankruptcy Proceedings). Counsel for Singer was then afforded an opportunity to dispute the facts as alleged by SSMC. *See id.* at 12. After hearing from both parties, Judge Paskay concluded that Singer had filed its petition in bad faith. In fact, he called the filing "a classic and gross misuse of Chapter 11" and "one of the wors[t] bad faith cases I've seen. . . . There is no doubt in my mind." *Id.* at 19, 23. On July 13, 1995, an order (at issue in this appeal) was entered dismissing the case. *See* Order Dismissing Chapter 11 Case (Bankruptcy Proceedings). At the same hearing, Judge Paskay

also entertained Singer's motion for sanctions and for an order declaring the Virginia Order void. After listening to Singer's recitation of the facts which it claimed gave rise to the relief requested, *see id.* at 26–37, the Bankruptcy Court denied the motions without even the need for argument from SSMC's counsel. He held that even if a legal basis for sanctions existed (which he found was not the case), on the facts articulated by Singer, there simply was no factual basis upon which to award sanctions, *see id.* at 38. Singer appeals this ruling as well.

After the case was dismissed, on July 21, 1995, Singer filed a motion for reconsideration of the dismissal order and for a stay pending appeal. *See* Debtor's Mot. for Reh'g, Recons. and Relief from Order Dismissing Chapter 11 Case or Mot. for Stay Pending Appeal (Bankruptcy Proceedings). On August 1, 1995, the Bankruptcy Court denied the motion for reconsideration. *See* Order on Mot. for Recons., Reh'g and Relief from Order Dismissing Chapter 11 Case or Mot. for Stay Pending Appeal (Bankruptcy Proceedings). On August 4, 1995, Singer filed its Notice of Appeal from the dismissal order. Thereafter, on August 17, 1995, after hearing arguments from both parties, the Bankruptcy Court denied Singer's motion for stay pending appeal. *See* Order Denying Mot. for Stay Pending Appeal (Bankruptcy Proceedings). In response, Singer filed a motion before this Court for a stay pending appeal, which was subsequently denied on August 31, 1995, when District Judge Nimmons found that Singer was unlikely to succeed on the merits.

On December 5, 1995, SSMC moved for sanctions against Singer, Singer's attorneys, and Paul A. Bilzerian, Singer's sole officer, director, and employee, for Singer's bad faith filing. SSMC relied upon Rule 9011 of the Federal Rules of Bankruptcy Procedure and the inherent power of the court to award sanctions against parties who act in bad faith. Notwith-

standing the earlier findings of bad faith, however, on March 14, 1996, the Bankruptcy Court denied that part of SSMC's motion for sanctions which was based upon Rule 9011 and deferred ruling on that part of the motion which was based on the court's inherent powers. SSMC appeals from this March 14, 1996 order and requests that sanctions be imposed under Rule 9011.

## II. *Standards of Review*

■ Upon review of bankruptcy proceedings, the Court will not set aside findings of fact unless such findings are clearly erroneous. *See* Fed.R.Bankr.P. 8013; *In re Downtown Properties, Ltd.*, 794 F.2d 647, 651 (11th Cir.1986). While conclusions of law are reviewed de novo, *In re Owen*, 86 B.R. 691, 693 (M.D.Fla.1988) *rev'd on other grounds*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), discretionary rulings made pursuant to the Bankruptcy Code are reviewable only for abuse of discretion. *See In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984).

## III. *Discussion*

### A. *Dismissal Order*

Singer alleges several errors relating to the Bankruptcy Court's dismissal of its Chapter 11 petition. Singer claims that: SSMC failed to meet its burden of proof on its motion to dismiss, the Bankruptcy Court should have held an evidentiary hearing, the Bankruptcy Court applied the summary judgment standard and based its legal conclusions on facts it erroneously believed were not disputed, and the Bankruptcy Court relied on several material facts merely alleged by SSMC in finding that Singer's case was filed in bad faith. These claims essentially challenge: (1) the factual basis underlying the Bankruptcy Court's dismissal of Singer's petition and (2) the procedural approach adopted by Chief Judge Paskay in determining whether to dismiss the petition. SSMC responds that overwhelming evidence sup-

ports the finding that the petition was filed in bad faith and that the Bankruptcy Court committed no procedural error in dismissing the petition.

■ Section 1112(b) of the Bankruptcy Code provides that, on request from a party of interest, the court may dismiss a case for cause. *See Colonial Daytona Ltd. Partnership v. American Sav. of Fla.*, 152 B.R. 996, 1000 (M.D.Fla.1993). In determining what constitutes "cause" under the Code, "the court may consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." *Albany Partners*, 749 F.2d at 674 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 406 [1977], U.S.Code Cong. & Admin.News 1978, pp. 5787, 6362). Of particular importance here, the Eleventh Circuit has determined that the debtor's bad faith in filing its petition for relief constitutes cause for dismissal of the bankruptcy case. *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988); *Albany Partners*, 749 F.2d at 674; *In re Double W Enter., Inc.*, 240 B.R. 450, 453 (Bankr.M.D.Fla. 1999); *In re Wells*, 227 B.R. 553, 560 (Bankr.M.D.Fla.1998). Here, Judge Paskay ruled that the case had been filed in bad faith and, therefore, that it should be dismissed. *See* Order Dismissing Chapter 11 Case (Bankruptcy Proceedings). The inquiry on appeal, then, turns on whether the Bankruptcy Court erred in determining that the Chapter 11 petition was filed in bad faith. "[T]he court has judicial discretion to evaluate the totality of the circumstances in each case and determine whether those circumstances indicate a bad faith filing by that debtor. This determination, since it is discretionary, will only be reversed by this Court if it finds the Bankruptcy Court has abused its discretion." *Colonial Daytona*, 152 B.R. at 1003.

■ The Eleventh Circuit has explained that in determining whether a bankruptcy case has been filed in bad

faith, "the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *Phoenix Piccadilly,* 849 F.2d at 1394 (quoting *Albany Partners,* 749 F.2d at 674). More precisely, the Eleventh Circuit has determined that the following factors evidence a bad faith filing:

(1) the debtor has only one asset to which it does not hold legal title;

(2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(3) the debtor has few employees;

(4) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in pending proceedings;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the lack of a realistic possibility of an effective reorganization; and

(7) whether the debtor is seeking to use the bankruptcy provisions to create and organize a new business, not to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business. *See Phoenix Piccadilly,* 849 F.2d at 1394; *In re Natural Land Corp.,* 825 F.2d 296, 298 (11th Cir. 1987); *Albany Partners,* 749 F.2d at 673–74; *see also In re Boughton,* 243 B.R. 830, 834 (Bkrtcy.M.D.Fla.2000) (employing the *Phoenix Piccadilly* factors in multiple asset cases although such factors are no longer applicable in single asset real estate cases). The bankruptcy record is replete with evidence relevant to these factors which would warrant the Bankruptcy

Court's finding of bad faith. First, Singer itself concedes that it is a holding company that is not engaged in any business and has no employees. *See* Br. for Appellant at 23–24; Tr. of Hr'g of Mot. to Dismiss at 12–13 (Bankruptcy Proceedings). Moreover, according to Singer's own documents and schedules, Singer had more than enough assets to pay its only two reported creditors other than SSMC at the time it filed its petition.[4] *See* List of Creditors Holding Twenty Largest Unsecured Claims; Summ. of Schedules; Tr. of Hr'g of Mot. to Dismiss at 13–14 (Bankruptcy Proceedings). As a result, Singer's financial problems consisted primarily of its disputes with SSMC. Furthermore, Singer's filing its bankruptcy petition on the eve of trial in the Virginia matter, after three unsuccessful attempts to transfer that case to Florida, does more than raise a suspicious eyebrow. *See* Tr. of Hr'g of Mot. to Dismiss at 15–16 (Bankruptcy Proceedings). "[C]ourts have recognized factors which show an 'intent to abuse the judicial process and the purposes of the reorganization provisions' [when] the petition was filed strictly to circumvent pending litigation...." *In re Dixie Broad. Inc.,* 871 F.2d 1023, 1026–27 (11th Cir.1989). In fact, Bilzerian admitted that Singer attempted to invoke the automatic stay provisions in order to evade the pending litigation and trial in Virginia. *See* Notice of Proffer of Exs., Ex. A at 12, 16–17; Debtor's Mot. for Reh'g, Recons. and Relief from Order Dismissing Chapter 11 Case or Mot. for Stay Pending Appeal, Ex. I (Bankruptcy Proceedings). Thus, circumventing the Virginia litigation was at least a motivating factor—if not the sole factor—behind Singer's bankruptcy petition. Additionally, there is no real possibility of reorganization because Singer, by its own documents, had nothing to reorganize. Singer reported no taxes, no accounts receivable,

---

**4.** The schedules indicate total assets of $30,000 and total liabilities of $12,050.79. These liabilities consist of a $10,000 loan to Singer's president and insider, Paul Bilzerian, and $2,050.79 for attorneys' fees owed to Mundy, Rogers & Prith of Roanoke, Virginia.

no accounts, no inventory, no bank account, no officer's compensation and no insurance in place. *See* Debtor's Monthly Financial Reports (Bankruptcy Proceedings). Therefore, viewing the factual circumstances here in light of the *Phoenix Piccadilly* factors, this Court holds that the Bankruptcy Court did not abuse its discretion when it dismissed Singer's petition because it was filed in bad faith.

■ As for Singer's second claim of error, this Court finds that the Bankruptcy Court conducted the dismissal hearing in an appropriate manner. The Code requires bankruptcy courts to conduct such "hearing[s] as [are] appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Courts throughout the country have held that evidentiary hearings are not required before a bankruptcy court dismisses a Chapter 11 petition due to bad faith. *See, e.g., In re Elmwood Dev. Co.,* 964 F.2d 508, 511–12 (5th Cir.1992); *In re Mazzocone,* 180 B.R. 782, 785–86 (E.D.Pa. 1995); *In re Cockings,* 172 B.R. 257, 260–61 (Bkrtcy.E.D.Ark.1994); *Colonial Daytona,* 152 B.R. at 1002; *In re Baker Oil Well Servs., Inc.,* Nos. 87–41489–76C, 89–4232–S, 1991 WL 49722, at *4 (D.Kan. Mar. 5, 1991). In *Colonial Daytona,* Bankruptcy Judge Paskay "requested the parties first give the Court all purportedly uncontested facts bearing on the issue of bad faith cause for dismissal, and then proffer evidence only if a material fact was deemed disputed." *Colonial Daytona,* 152 B.R. at 1002. Although the debtor's counsel asserted that some facts were disputed, after further inquiry, the Bankruptcy Court found that the facts at issue were either immaterial or not truly disputed. *See id.* In *Colonial Daytona,* Chief Judge Kovachevich ruled that there was no error in Judge Paskay's approach. *See id.* The same procedure was followed here and Singer fails to provide a reason not to follow *Colonial Daytona.* Judge Paskay explained the procedure followed in this case subsequent to the hearing:

In every case we ask what are the disputed facts, and you recite the litany of *Little Creek Development* and the rest of the bad faith cases and is it disputed no assets, no employees, no business, two-party dispute and the rest of it, and if those are established without dispute, you don't need any trial.... The way the hearing took place was like every motion to dismiss for bad faith filing takes place, that we cite from the cold record the facts. Is it disputed? If not disputed, that's what it is.

Tr. of Hr'g of Debtor's Mot. for Stay Pending Appeal at 24–26 (Bankruptcy Proceedings). The transcript reveals that the Bankruptcy Court provided Singer's counsel an opportunity to proffer evidence regarding bad faith that might dispute the facts as recited by SSMC. *See* Tr. of Hr'g of Mot. to Dismiss at 12–23 (Bankruptcy Proceedings). Judge Paskay was unconvinced by counsel's entreaties. *See id.* Under *Colonial Daytona,* providing an opportunity to proffer evidence in this manner is not inappropriate. The Bankruptcy Court's procedural approach does not constitute error.

### B. *Violation of the Automatic Stay and Sanctions*

Singer also argues that the Bankruptcy Court erred when it denied its motion for a determination that the Virginia Order entered by the United States District Court for the Western District of Virginia (the "District Court") was a violation of the automatic stay. As a supplement to this argument, Singer claims that the Bankruptcy Court erred in ruling that SSMC and its counsel were not subject to sanctions, or in the alternative, contempt, for their willful violation of the automatic stay through the implementation of the Virginia Order. In response, SSMC contends that the Bankruptcy Court's decision finding that there was no violation of the automatic stay was correct and should be affirmed because the Virginia Order did not affect any property of the estate.

### 1. *The Transaction*

Prior to examining the Bankruptcy Court's decision it is important to have an understanding of the complicated series of transactions that led to the Virginia suit and ultimately the bankruptcy filing. Singer and SSMC entered into a share purchase agreement for the sale of stock of Singer Furniture Company ("Singer Delaware") from SSMC to Singer in exchange for a $44,600,000 note, a guaranty by Bilzerian (a principal in Singer) and BPLP–I (a partnership with an ownership interest in Singer), and a pledge of Singer Delaware stock (the "Stock Pledge Agreement"). *See SSMC, Inc. N.V. v. Singer Furniture Acquisition Corp.*, No. 93–0952–R, slip op. at 4 (W.D.Va. May 5, 1995) ("*SSMC,* slip op.").[5] The Stock Pledge Agreement required Singer to deliver, assign, and transfer to SSMC a lien on and a security interest in, pledged shares, defined as 1000 shares in Singer Delaware. *See id.* In addition, Singer agreed to deliver any additional shares it received from Singer Delaware; it agreed to deliver all stock powers and proxies to SSMC; and agreed not to sell or otherwise dispose of the shares.[6] *See id.* "In the event of default, SSMC could sell the pledged collateral." *Id.* at 4–5. To perfect a security interest, the stock certificate for the 1000 shares of Singer Delaware remained in the name of SSMC and remained in its possession. *See id.* SSMC assigned its rights and interest in the stock to Singer Delaware. *See id.; see*

*also* Tr. of Summ.J.Mot. at 7. In essence, legal title of Singer Delaware remained with SSMC while Singer had an equitable interest. *See* Tr. of Summ.J.Mot. at 7–8, 11.[7]

Before the $44,600,000 note was due, disputes erupted among the various parties regarding this transaction as well as other transactions in which they had engaged. *See SSMC,* slip op. at 5. A Refinancing Agreement which altered the payment terms of the original purchase of Singer Delaware was signed. *See id.* The Refinancing Agreement was never fully consummated and consequently the equitable and legal ownership of Singer Delaware was not altered under the agreement. *See id.* at 5–6. Negotiations between the parties continued. *See id.* at 6.

Meanwhile, in the Fall of 1991, Singer caused Singer Delaware to form a subsidiary: Singer Furniture Company of Virginia ("Singer Virginia"). *See id.* Singer Delaware then merged into Singer Virginia, leaving Singer Virginia as the surviving corporation. *See SSMC,* slip op. at 6. Subsequently, Singer "surrendered" its 1000 shares of Singer Delaware in exchange for four million shares of the surviving company. *See id.* at 7. This exchange occurred even though Singer did not have the stock certificate and it was not the record shareholder of Singer Delaware. *See id.* (indicating that Singer had altered its stock book to make it appear

---

**5.** These parties have been active in a number of courts. A more complete picture of the complex series of transactions, of which this bankruptcy is just one, can be pieced together from the various opinions. *See, e.g., SSMC, Inc., N.V. v. Steffen*, 102 F.3d 704 (4th Cir. 1996); *SSMC, Inc., N.V. v. Singer Furniture Acquisition Corp.*, No. 93–0952, slip op. at 2–5 (W.D.Va. April 10, 1995); *In re Bicoastal Corp.*, 164 B.R. 1009, 1017 (Bankr.M.D.Fla. 1993) (Bicoastal Corporation is the parent company of Singer Furniture Acquisition Corporation), *see* Notice of Proffer of Exs., Ex. A at 4–5 (Bankruptcy Proceedings).

**6.** As a defense in the Virginia suit, Singer claims that SSMC abdicated its security inter-

est at the "Second Closing." It is undisputed that the "Second Closing" never took place, *see SSMC,* slip op. at 6, and consequently the security interest remained.

**7.** Counsel for SSMC stated at the summary judgment motion session before Judge Kiser that Singer "had an assignment [of rights] to bar rights in those shares which were still in our name legally and were being held by us. It had our agreement pursuant to the assignment to run the company, vote the shares, as long as it wasn't in breach of the parties' agreements, and to generally treat itself as the owner of the company, but it was not the registered owner." Tr. of Summ.J. Mot. at 11.

that there was no outstanding certificate). Moreover, Singer neither informed SSMC of the exchange nor delivered the new shares to SSMC as required by the Stock Pledge Agreement. *See id.*

Singer Virginia then bought back 3,900,000 of the new shares in purported forgiveness of a $25,000,000 debt owed to it by Singer. *See id.* After the buy-back, Singer was left with 100,000 shares of Singer Virginia. *See id.* In an alleged effort to recapitalize, Singer Virginia then issued 720,000 shares of stock to Steffen (a member of Singer Delaware's board), 38,032 shares to Ammons (president and CEO of Singer Delaware and now Singer Virginia, and a member of Singer Virginia's board), and 25,644 shares to Matthews (vice-president, secretary, and treasurer of Singer Delaware and a member of Singer Virginia's board). *See SSMC,* slip op. at 7. As a result of this transaction, Singer's interest in Singer Virginia was reduced to about ten percent. *See id.* In March 1993, Singer purported to sell its remaining 100,000 shares back to Singer Virginia, completely eliminating Singer's interest in Singer Virginia. *See id.* at 8.

Based on Singer's actions, SSMC filed suit in Virginia, alleging that it was deprived of its rightful security interest in Singer Delaware by a fraudulent corporate restructuring. There were several other defendants in addition to Singer, namely Singer Virginia individual defendants Steffen, Ammons, and Matthews, and the directors and officers of Singer Virginia.

### 2. The Virginia Pretrial Conference and Order

Although Singer made several unsuccessful attempts to remove the case to Florida, it remained in Virginia, and, on April 13, 1995, the District Court of the Western District of Virginia heard summary judgment arguments in the case styled *SSMC, Inc. N.V. v. Singer Furni-*

*ture Acquisition Corp.* The District Court took the summary judgment motions under advisement and declined to enter an order at oral arguments. Then, on May 2, 1995, two days prior to a scheduled pretrial conference in the Virginia action, Singer filed bankruptcy in Florida. Despite the filing, on May 4, 1995 a pretrial scheduling conference was held for the Virginia action. *See* Tr. of Pretrial Conference at 1. Singer was not represented at the conference, but the non-debtor defendants' attorneys were all present. *See id.* At the start of the conference, Judge Kiser asked counsel to address how the bankruptcy petition affected the Virginia trial, scheduled to start in a week. *See id.* at 1. Counsel for SSMC encouraged the court to proceed without Singer, while counsel for the non-debtor defendants were split—two argued the trial should proceed while one asserted that Singer was a necessary party. *See id.* at 2–4. The conference transcript indicates that Judge Kiser was cognizant of the bankruptcy filing and what, if any, effect it had on the Virginia proceedings. *See id.* at 1, 5.

During the course of the conference, Judge Kiser offered a draft memorandum of the summary judgment motions. *See* Tr. of Pretrial Conference at 10. The opinion concluded that the purported merger between Singer Delaware and Singer Virginia was legally ineffective, essentially reasoning Singer Virginia out of existence. *See id.* at 10–12.[8] Moreover, the court ruled as matter of law that the 1000 shares of stock that Singer transferred to Singer Virginia was legally owned by SSMC. *See id.* at 13. In effect, SSMC owned the still existing Singer Delaware. *See id.* at 17 ("[SSMC] own[s] the corporation [Singer Delaware]."). Pursuant to this decision Judge Kiser immediately issued an Order (the "Virginia

---

8. The court reasoned that based on the Stock Purchase Agreement, Singer did not have the right, without SSMC consent, to effect the vote of the stock and create a new corporation. *See* Tr. of Pretrial Conference at 17.

Order").[9] The Virginia Order "hereby ADJUDGED and ORDERED that the attempted merger between [Singer Delaware] and [Singer Virginia] was a legal nullity; and [Singer Delaware] still exists as a Delaware Corporation, and all existing shares of [Singer Delaware] are owned by plaintiff SSMC, Inc. N.V." Br. for Appellant Ex. A.

### 3. *The Automatic Stay*

■ Based on the record before this Court, the finding of the Bankruptcy Court that the Virginia Order did not violate the automatic stay is not clearly erroneous. The automatic stay operates to enjoin a creditor from attempting to possess or exercise control over property of the estate once a petition has been filed. *See* 11 U.S.C. § 362. Property of the estate has been defined broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). If property is not property of the estate, then the automatic stay does not protect it. *See In re Burnsed,* 224 B.R. 496, 498 (Bankr. M.D.Fla.1998). Thus, the threshold inquiry, determined under federal law, *see id.* (citation omitted), is whether the Virginia Order in fact asserted control over property of the estate.

■ It is SSMC's contention that the Bankruptcy Court properly concluded that the Virginia Order did not violate the automatic stay because no property of the estate was affected. SSMC rests this conclusion on the claim that, at the time the petition was filed, Singer did not possess any shares of Singer Virginia, and, pursu-

ant to the Stock Pledge Agreement, it never had any. To counter this, Singer asserts that the Virginia Order both vested and stripped Singer of its ownership of the stock by declaring the merger void and improperly awarding the stock to SSMC. Essentially, Singer asked the Bankruptcy Court to void an order of the District Court for the Western District of Virginia, a federal court.[10] The Bankruptcy Court concluded that the Virginia Order was not a violation of the stay because it affected "nondebtor's assets." *See* Tr. of Hr'g of Mot. to Dismiss at 32–35 (Bankruptcy Proceedings).

The Bankruptcy Court's finding is supported by the record. The Virginia Order essentially turned back the clock in determining the transactions between SSMC and Singer. The merger of Singer Delaware and Singer Virginia and all events thereafter were void or voidable. *See* Tr. of Pretrial Conference at 15. Thus, Singer's purported transfer of the 1000 shares of Singer Delaware stock to Singer Virginia for four million shares of Singer Virginia was erased, as was Singer's surrender of 3,900,000 shares back to Singer Virginia for the "forgiveness" of a $25,000,000 debt. The "recapitalization" that resulted in share purchases by Steffen, Ammons, and Matthews was also declared invalid.

The unwinding of the merger affected only the assets of Steffen, Ammons, Matthews, and Singer Virginia—all non-debtors. By returning the parties to pre-merger status quo the Virginia Order did not exercise control over property of the estate.

---

**9.** The court agreed with SSMC's concern that given Singer's bankruptcy filing days before the conference, there was a great possibility that Singer Delaware would file bankruptcy prior to the issuance of the court's order. *See* Tr. of Pretrial Conference at 21–22. Thus, the court issued an Order with an opinion to follow to ensure that the Order was entered before Singer Delaware had an opportunity to file bankruptcy and stay the district court's action. *See id.*

**10.** To conclude that the order was a violation of the stay, the Bankruptcy Court would have been forced to conclude that either District Court Judge Kiser erred in finding that the order did not effect property of the estate or willfully entered an order that violated the automatic stay. These issues raise a series of interesting questions that do not need to be answered for a complete disposition of this case.

Singer concedes that at the time of the bankruptcy petition it owned no shares of Singer Virginia. This is confirmed by the Schedules, which do not list the shares as assets. *See* Voluntary Pet. Ex. A (Bankruptcy Proceedings). Thus, the fact that the merger was declared invalid did not impact the bankruptcy estate. Moreover, prior to bankruptcy, although Singer did have an equitable interest in Singer Delaware, Singer did not have legal ownership of the Singer Delaware shares. Placing Singer Delaware shares in the possession of SSMC returned the parties to their pre-petition status. While the Virginia Order placed the existing shares of Singer Delaware in the possession of SSMC, it did not purport to alter the assignment of rights made at the time of the original closing. *See supra* Section III.B.1. Thus, legal ownership of Singer Delaware remained with SSMC and equitable ownership remained with Singer. The Virginia Order did not strip Singer of interest in the stock.

As written, therefore, the Virginia Order did not violate the automatic stay.[11]

11. Singer also suggests that the written opinion, which was entered a day after the Virginia Order, also violated the stay. The record on this matter is incomplete, however. A copy of the Memorandum Opinion was included as Exhibit B of the Appellant's Brief. Unfortunately, Singer only provided the Court with pages one through eight, and ten—basically the facts section. As a result, based on the record before this Court, there was no violation of the stay.

12. The transcript of the pretrial conference with Judge Kiser, counsel for SSMC, and counsels for the non-debtor defendants in the Virginia action, provides a preview of SSMC's interpretation of the Virginia Order. It appears that counsel for SSMC may have made some leaps in reasoning based on the discussion. For example, the district court stated that the original stock purchase agreement was still in effect and that the corporate restructuring violated the agreement. *See* Tr. of Pretrial Conference at 16. Other than declaring that the merger was invalid, the court provided no other remedy. Counsel for SSMC, however, seemed to imply that the violation of the stock pledge agreement result-

While the Virginia Order itself did not violate the stay, the interpretation and implementation of the order by SSMC may have done so. Specifically, it appears that SSMC assumed control of Singer Delaware, essentially divesting Singer of its equitable interest and thus altering their pre-petition status. Singer raised this issue with the Bankruptcy Court when counsel stated:

| | |
|---|---|
| MS. LoCICERO: | Judge, we also believe that the SSMC continues to violate the automatic stay. |
| THE COURT: | By doing what? |
| MS. LoCICERO: | By continuing to take possession of [Singer Delaware]. |
| THE COURT: | Precisely, what are they doing? |
| MS. LoCICERO: | Managing it, operating it, as if they were the owners. We again believe that we were the owners, that when the merger was undone an interest of ours— |
| COURT: | Who owns [Singer Delaware]? |
| MS. LoCICERO: | [Singer Delaware] was a subsidiary of the debtor. |

Tr. of Hr'g of Mot. to Dismiss at 36 (Bankruptcy Proceedings). Although the record is far from clear on this issue,[12] it does

ed in all ownership interests reverting to SSMC. There is no indication in the transcript or in the Virginia Order, however, that the court intended that the equitable interests revert to SSMC:

THE COURT: I'm simply saying that there was no ability, without the consent of SSMC, pursuant to the stock purchase agreement, there was no ability for Mr. Bilzerian to go in and in effect vote the stock, and that's basically what he did.
COUNSEL FOR DEFENDANT [COUNSEL FOR SINGER DELAWARE]: Okay, but of course don't [sic] agree that they gave our voting rights or turned over our voting rights.
THE COURT: Well, under certain conditions.
[COUNSEL FOR SSMC]: Right, and there was a clear violation—I think you're right. We clearly would have the voting rights today.
*Id.* at 17–18. The leap made by SSMC is not supported by the record before this Court. SSMC assigned Singer voting rights except in instances when the voting violated the Stock

appear that SSMC violated the automatic stay by interfering with Singer's equitable interest in Singer Delaware. By its own admission, SSMC "remained the registered legal owner of the shares, with [Singer] having all right, title and interest in those shares to run the company, pursuant to the parties' assignment." Tr. of Summ.J. Mot. at 12. Thus, when SSMC assumed an ownership interest it exercised control over property of the estate in violation of the automatic stay.

### 4. Sanctions for Willful Violation of the Automatic Stay

■ Even if, as Singer contends, there was a willful violation of the automatic stay sanctions are not available under 11 U.S.C. § 362(h). Section 362(h) provides that an "individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Based on the word "individual," the Bankruptcy Court concluded that the remedy under section 362(h) was not available to corporations. See Tr. of Hr'g of Mot. to Dismiss at 38 (Bankruptcy Proceedings).

A year after the Bankruptcy Court's decision, the Eleventh Circuit held that the term "individual" does not include corporations or other artificial entities. See Jove Eng'g, Inc. v. Internal Revenue Service, 92 F.3d 1539, 1549–53 (11th Cir.1996) (recognizing circuit split and concluding that "individual" refers to natural persons). Specifically, the court ruled that a corporate debtor is not entitled to relief under section 362(h) "because the term 'individual' is limited to natural persons and does not include corporations or other artificial entities." Id. at 1552–53. Based on this controlling precedent, the Bankruptcy Court's conclusion that sanctions under section 362(h) are unavailable to corporate debtors is affirmed.

Pledge Agreement. There is no indication that a violation of the pledge agreement re-

■ Although Singer suggests that sanctions are appropriate under other provisions of the Bankruptcy Code, specifically section 105 and Rule 9020, nothing in the record suggests that the Bankruptcy Court's refusal to apply sanctions was an abuse of discretion. Sanctions are not mandatory and, given the equities of the case, it was not unreasonable for the Bankruptcy Court Judge to decline to impose them.

### C. SSMC's Motion for Sanctions Under Rule 9011

SSMC appeals from that part of the Bankruptcy Court's March 14, 1996 order that denied its motion for sanctions under Federal Rule of Bankruptcy Procedure 9011 against the law firm of Gibbs & Runyan, P.A., Cindy L. LoCicero, Bilzerian, and Singer. See Order Den. in Part and Deferring Ruling in Part on SSMC's Mot. for Sanctions (Bankruptcy Proceedings). The order specified that the motion pursuant to Rule 9011 "is denied for the reasons stated at the hearing." Id. ¶ 1. The transcript of the hearing reveals that Chief Judge Paskay interpreted Rule 9011 to require all three of the following deficiencies: (1) the petition contains untrue factual assertions that could have been obtained after a reasonable inquiry; (2) the petition is not warranted by existing law, and (3) it was imposed for an improper purpose. See Tr. of Hr'g of SSMC's Mot. for Sanctions at 6–13 (Bankruptcy Proceedings). At one point, Judge Paskay expressly refers to the first "requirement," i.e., untrue factual assertions, as "[t]he very early and the initial threshold requirement...." Id. at 7. By referring to untrue factual assertions as a "threshold requirement," the Bankruptcy Court reveals its conceptualization of Rule 9011 as a series of requirements, all of which must be met in order for sanctions to lie. SSMC challenges the Bankruptcy Court's interpretation of Rule 9011 and requests that this Court not only

sulted in an automatic reversion of all voting rights.

hold that the Bankruptcy Court abused its discretion in applying the law in this manner, but also order the Bankruptcy Court to grant SSMC's motion for sanctions on remand.

 Even though the question at issue is purely one of law, an abuse of discretion standard is applied in reviewing all aspects of the lower court's determination of a sanctions motion. *See Glatter v. Mroz*, 65 F.3d 1567, 1571–72 (11th Cir. 1995) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 [1990]; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 [1991]). Nonetheless, a court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1507 n. 10 (11th Cir.1993) (quoting *Cooter & Gell*, 496 U.S. at 405, 110 S.Ct. 2447 [internal quotation marks omitted]). Consequently, if the Bankruptcy Court erred in its legal interpretation of Rule 9011, then it necessarily abused its discretion.

 Respectfully, here the Bankruptcy Court misinterpreted Rule 9011.[13] First, looking to the text of the Rule, when an attorney signs a submission to the court, she certifies that it is well grounded in fact, warranted by existing law, and not interposed for any improper purpose. *See* Fed.R.Bankr.P. 9011(a) (amended 1997). Thus, when signing a document, she makes

all three of these independent promises. As a result, a deficiency with respect to any one of these three assertions places the attorney's certification in question. Furthermore, the Eleventh Circuit has explained, "three types of conduct warrant Rule 11 sanctions: '(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.'" *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir.1993) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 [11th Cir.1991]).[14] Reference to "three types of conduct," *id.*, suggests three independent and distinct sources of sanctionable action, rather than, as the Bankruptcy Court apparently perceived, one action requiring all "three types of conduct." The Eleventh Circuit's language in *Mroz* also supports SSMC's interpretation: "Sanctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable *or* without factual foundation, *or* (2) the pleading is filed in bad faith or for an improper purpose." *Mroz*, 65 F.3d at 1572 (citing *In re Smith*, 82 B.R. 113, 114 [Bankr.D.Ariz.1988]) (emphasis added). In parsing Rule 9011 with the alternative conjunction "or," the Eleventh Circuit clearly indicates that sanc-

---

**13.** On April 11, 1997, Rule 9011 was amended with an effective date of December 1, 1997. The conduct giving rise to the claim for sanctions in this matter, however, took place prior to 1997. Thus, the Court applies the pre-amendment version of the rule. *See In re Graffy*, 233 B.R. 894, 896 n. 3 (Bankr. M.D.Fla.1999) (citing *In re 680 Fifth Ave. Assoc.*, 218 B.R. 305, 312–13 [Bankr.S.D.N.Y. 1998]). As of 1995, when the petition was filed, Rule 9011 required that every petition filed in a case under the Code be signed by at least one attorney of record. This signature then:

> constitutes a certificate that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information, and belief formed after reasonable in-

> quiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.

Fed.R.Bankr.P. 9011(a) (amended 1997). This version was in effect at all times material to this case (i.e., pre-amendment).

**14.** The Eleventh Circuit has made clear that courts ought look to authorities interpreting the standards under Rule 11 in applying Bankruptcy Rule 9011. *See Mroz*, 65 F.3d at 1572.

tions are warranted, for example, where a paper has a proper factual foundation, but was nonetheless filed for an improper purpose. Consequently, an attorney's signature represents a series of promises, and the violation of any particular promise constitutes sanctionable conduct under Rule 9011.

▉▉▉ By requiring SSMC to show that the petition contained untrue factual assertions as a "threshold requirement," the Bankruptcy Court's interpretation is at odds with the Eleventh Circuit's command in *Mroz*. Instead, the Bankruptcy Court ought consider not only whether it contained untrue factual assertions or was legally unreasonable, but also whether the petition was filed in bad faith or for an improper purpose. This interpretation makes great sense, for as SSMC points out in its brief, "[a]bsent, a reversal, litigants in this Circuit will be free to file frivolous petitions simply to harass and delay as long as they ensure that the facts stated in their legally frivolous filings are themselves accurate." Br. for Appellant, SSMC Inc. N.V. at 3. In its own way, each of the three prohibited types of conduct wreak havoc on an already overburdened judicial system in addition to wasting the time and energy of the opposing party and its counsel. As a result, each type of conduct should be individually subject to sanctions under Rule 9011. Therefore, this Court holds that the Bankruptcy Court abused its discretion when it applied an erroneous interpretation of Rule 9011, and remands the issue to the Bankruptcy Court with direction to reconsider the motion in light of this decision. This ruling ought not, however, be interpreted as mandating that sanctions be imposed. It simply requires that the analytic approach of the Eleventh Circuit be followed.

### IV. *Conclusion*

In light of the foregoing, the Court AFFIRMS the Bankruptcy Court's determination that Singer's bankruptcy petition was filed in bad faith and, therefore, warranted dismissal. [Case No. 95–1452; Dkt. 5]. The Court also AFFIRMS the Bankruptcy Court's ruling that the Virginia Order did not violate the automatic stay and its denial of sanctions pursuant thereto. [Case No. 95–1452; Dkt. 5]. The Court, however, REVERSES the Bankruptcy Court's determination of sanctions and REMANDS that issue for reconsideration in light of this opinion. [Case No. 96–1021; Dkt. 3].

SO ORDERED.